IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Gregory Lafaral Ford, #245122 | ) | |
| | ) | Civil Action No. 8:07-1581-HMH-BHH |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| | ) | |
| Simon Major, Director SLRDC; | ) | |
| and Jackie Richards, Head Nurse | ) | |
| SLRDC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. This matter is before the Court on the defendants' motions for summary judgment (Dkt. # 12 and 25).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

The plaintiff brought this action on June 7, 2007, seeking damages for alleged civil rights violations. On September 17, 2007, defendant Simon Major filed a motion for summary judgment. (Dkt. #12). On September 18, 2007, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately

respond to the motion. On October 17, 2007, the defendant Jackie Richards filed a motion for summary judgment. (Dkt. #25.) On October 18, 2007, pursuant to *Roseboro*, the plaintiff was again advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motions. The plaintiff filed a response opposing the defendant Major's summary judgment motion on April 10, 2008.

## **FACTS PRESENTED**

The plaintiff is a state inmate who is currently housed at the Kirkland Correctional Institution. Prior to being transferred to Kirkland, the plaintiff was housed at the Sumter Lee Regional Detention Center ("SLRDC"). The plaintiff suffers from achalasia, a disease which has caused his esophagus muscles to stop working properly and prevents him from being able to eat solid foods. (Compl. at 3.) He has undergone two surgeries and been treated by a gastroenterologist. (*Id.*) He was prescribed five cans of Boost a day for weight stabilization and for eighteen months, while in the SLRDC he was given the five cans of Boost daily. (*Id.*) However, in March 2007, he alleges that the new medical provider at SLRDC discontinued his prescription for Boost. (*Id.*)

Beginning on February 1, 2007, all medical care at the SLRDC was handled by Southern Health Partners. (Def. Majors' Mot. for Summ. J. Ex. - Major Aff. ¶ 4.) Prior to February 1, 2007, medical care was handled by a different medical provider. (*Id.*) Defendant Jackie Richards is nurse employed by Southern Health Partners, Inc. (Def. Richard's Mot. For Summ. J. Ex. A- Richards Aff.)

The plaintiff alleges that on March 8, 2007, he was seen by Dr. Bush to determine if he should continue on the Boost. (Compl. at 3.) Dr. Bush told the plaintiff he could remain on the Boost until he was seen by a surgeon. On March 16-17, 2007, the plaintiff was placed on medical observation for seven days to monitor his food intake and regurgitation. The plaintiff alleges the medical staff did not check his food trays, so he began to write down the amount of food he ate. (Compl. at 3-4.) The plaintiff alleges that after the seven days, the defendant Richards told him that he had thrown up only once during the seven days and that after his last case of Boost was finished, the Boost would be discontinued. (Compl. at 4.) The plaintiff alleges he inquired about the consultation with the surgeon and Dr. Bush told him that "in a lot of cases, if the inmate doesn't have money or insurance the surgeon won't see him." (*Id.*) The plaintiff is seeking to have his supply of Boost reinstated and compensatory and punitive damages. (Compl. at 5.)

In his affidavit filed opposing the defendant Major's summary judgment motion, the plaintiff states that he visited a gastroenterologist on January 7, 2008, and he has undergone a series of tests. (Pl.'s Aff. Opp. Def. Majors' Summ. J. Mot. at ¶ 10.) After the tests, he states he was immediately prescribed four cans of Boost daily. (*Id.*) He alleges, however, that due to the lack of nutrition, he is highly stressed and fatigued (*id*. at 12) and during the time he was denied Boost, he was fearful of a relapse of starvation (*id*. at 15). He contends that his "immediate injury was caused by the excessive, undue, additional pain and suffering due to lack of proper medical treatment that his condition required." (*Id*. at 16.)

3

**APPLICABLE LAW**

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all interferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that

4

specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## DISCUSSION

### Defendant Majors' Motion for Summary Judgment

The defendant Majors has moved for summary judgment on the claims against him because he contends that the plaintiff has failed to show any evidence of deliberate indifference to a serious medical need on Major's behalf; the plaintiff has not established any personal involvement on Major's behalf to support a claim based on supervisor liability; and he is entitled to qualified immunity. The undersigned agrees.

To establish a claim for deliberate indifference to medical needs, a plaintiff must present facts that establish the defendant had actual knowledge of and disregard for an objectively serious medical need. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). Deliberate indifference to the serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976). Thus, the plaintiff must show: (1) a serious injury; and (2) deliberate indifference on the part of the defendant.

"A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.'" *Coppage v. Mann*, 906 F.Supp. 1025, 1037 (E.D.Va.1995) (quoting *Monmouth Co. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.1987)). Further, an inmate is not entitled to unqualified access to health care; the right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977).

First, it is well-established that a civil rights plaintiff must allege the personal involvement of a defendant to state a claim under 42 U.S.C. § 1983 . *See, e.g., Monell v. Department of Social Svs.*, 436 U.S. 658, 691-92 (1978). As noted by the defendant Major, aside from the caption in this case, the plaintiff does not make any allegations regarding the defendant Major or even refer to him at all in the body of the complaint.[1] (Def. Major's Mot. for Summ. J. at 5-6, 7.) Further, the undersigned notes that the defendant Major, the Director of the SLRDC, is not medical personnel. The Fourth Circuit has held that to bring a claim alleging the denial of medical treatment against non-medical prison personnel, an inmate must show that such officials were personally

---

[1] In his affidavit filed in opposition to the defendant Major's summary judgment motion, the plaintiff states that on November 19, 2007, he asked Dr. Bush if he could be put back on Boost and Dr. Bush responded, " You will have to ask Simon Major." (Pl.'s Aff. ¶ 8.) However, there are no allegations that he ever asked Major to be placed back on Boost.

6

involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. *Miltier v. Beorn*, 896 F.2d 848 (4th Cir.1990). Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. *Id.* Under these principles, the plaintiff has not alleged facts stating any claim actionable under § 1983 regarding his medical treatment against the defendant Major who is non-medical personnel.

Furthermore, to the extent the plaintiff relies on the doctrine of supervisory liability in his claims against the defendant Major, the plaintiff has failed to make any showing of supervisory liability. "Supervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of respondeat superior, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury." *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990) (citation omitted). The plaintiff must demonstrate that the prisoner faced a pervasive and unreasonable risk of harm from some specified source, and that the supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practices. *Id. See also Moore v. Winebrenner,* 927 F.2d 1312 (4th Cir.1991); *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984). In the context of a medical indifference claim, supervisory liability may only be shown where the official failed to promptly provide a prisoner with necessary medical care, deliberately interfered with a prison doctor's performance, or was indifferent to a prison physician's constitutional violation. *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir.1990). There are no allegations or

evidence that Majors failed to promptly provide the plaintiff with necessary medical care, deliberately interfered with the prison doctor's performance, or was indifferent to the prison physician's constitutional violation. The undersigned finds any claim based upon supervisory liability on the defendant Majors for the alleged constitutional violations fail because plaintiff has not shown a specific, anticipated risk of harm for which the defendant Major in his supervisory capacities showed deliberate indifference or tacit authorization.[2]

The defendant Major also raise the defense of qualified immunity, which requires "(1) identification of the specific right allegedly violated; (2) determining whether at the time of the alleged violation the right was clearly established; and (3) if so, then determining whether a reasonable person in the [official's] position would have known that doing what he did would violate that right." *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir.1992). However, because there is no evidence that any specific right of the plaintiff was violated, it is unnecessary for this Court to address the qualified immunity defense. *Porterfield v. Lott*, 156 F.3d 563, 567(4th Cir.1998) (holding when the court determines that no right has been violated, the inquiry ends there, "because government officials cannot have known of a right that does not exist."). Accordingly, based on the foregoing, the defendant Majors' motion for summary judgment should be granted.

---

[2]The plaintiff argues principles under agency law in support of his argument that the defendant Major is liable. (Pl.'s Mem. Opp. Def. Major's Summ. J. Mot. at 2.) However, under the applicable law for supervisory liability, as set out above, the defendant Major is liable only if he showed deliberate indifference or tacit authorization.

**Defendant Richards' Motion for Summary Judgment**

The defendant Richards contends in her motion for summary judgment that the plaintiff has failed to state a claim of medical indifference against her. The undersigned agrees.

Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee a prisoner receive the treatment of his choice. *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir.1988). The type and amount of medical care is discretionary. *See Brown v. Thompson*, 868 F.Supp. 326 (S.D.Ga.1994). The mere fact that a prisoner may believe he had a more serious injury or that he required better treatment does not establish a constitutional violation. *See, e.g., Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir.1975). Incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. *Miltier*, 896 F.2d at 851.

In his complaint, the plaintiff alleges the decision to stop providing the plaintiff with Boost was made by Dr. Bush, not the defendant Richards. The record supports this allegation. (Def. Richards' Mot. for Summ. J. Mot. - Pl.'s Medical Records Ex. B at 1.) Furthermore, the plaintiff has failed to show that as a result of defendant Richards' deliberate indifference, if any, the plaintiff has suffered a specific injury affirmatively linked to the conduct of the defendant Richards. *See Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976). He has not alleged he lost any weight or that his condition worsened during the time the Boost was discontinued.

Further, "an inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1188 (11th Cir.1994). As stated above, a medical need is serious if a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.'" *Coppage v. Mann*, 906 F.Supp. at 1037. The plaintiff has failed to allege how any such delay in his treatment, i.e. continuing on the Boost, resulted in a life-long handicap or permanent loss. Based on the foregoing, the plaintiff's medical indifference claim should be dismissed.

In his affidavit filed in opposition to the defendant Richards' summary judgment motion, the plaintiff states that all of his medical records were not submitted by the defendant Richards and the medical records that were submitted were not in chronological order. (Pl.'s Mem. Opp. Def. Richards' Mot. for Summ. J. Ex. Pl.'s Aff. ¶¶ 1-3.) Even assuming this is true, the plaintiff does not elaborate any further on how this has effected this action. He further alleges that the defendant Richards was actually punishing him for a prior outburst when the plaintiff was placed on medical observation for six days. (*Id*. ¶ 3.) He specifically states the medical observation was "actually a form of solitary confinement for the sole purpose of punishing [the] plaintiff into submission." (*Id*. ¶ 5.) Further, he alleges that Richards did not periodically check on him while he was in observation which he contends supports his argument that the observation was actually a punishment. (*Id*.)

10

To the extent that the plaintiff is now alleging a claim for cruel and unusual punishment, he must make an objective showing of a sufficiently serious deprivation of a basic human need and a subjective showing that prison officials acted with a sufficiently culpable state of mind of deliberate indifference to prison conditions. *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir.1993). However, the constitutional prohibition against cruel and unusual punishment does not require comfortable prison conditions, and "only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir.1995).

Before prison conditions can constitute cruel and unusual punishment, the plaintiff must not only allege prison conditions that "could rise to the level of constitutional violations were they to produce serious deprivations of identifiable human needs," but also submit evidence that he "sustained serious or significant physical or emotional injury as a result of these conditions." *Strickler*, 989 F.2d at 1381. However, in the "extraordinary case of a palpable deprivation of the minimal requirements of civilized existence . . . an inference of serious injury might be reasonable." *Id.* at 1382. A subjective showing of deliberate indifference requires that a prison official know of and disregard an objectively serious prison condition. *Shakka*, 71 F.3d at 166. Confining the plaintiff for medical observation for six or seven days clearly would not rise to the level of constitutional deprivation needed to allege a claim of cruel and unusual punishment. Further, the plaintiff has failed to allege any injury from his observation. Accordingly, based on the foregoing, the defendant Richards should be granted summary judgment.

## **CONCLUSION**

Wherefore, based on the foregoing, it is RECOMMENDED that the Defendants' Motions for Summary Judgment (Dkt. # 12 and 25) be GRANTED and the Plaintiff's complaint DISMISSED with prejudice.

FURTHER, if the District Court adopts this report, it is RECOMMENDED that the Plaintiff's Motion for a Preliminary Injunction (Dkt. # 24) be DENIED as moot.

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks
United States Magistrate Judge

April 23, 2008
Greenville, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**